Afternoon Chief Judge Owen and may it please the court. My name is Kenneth East and I represent Fort Worth Police Officer William Martin. By calmly effecting four lawful arrests in the midst of a hostile and chaotic scene, well, excuse me, well what calmly? Yes your honor. You must not have looked at the video. When, facetious. When the interaction with Mrs. Craig began, his choice of words was regrettable. When the use of force began, when the arrests began, he was immediately, not only verbally, but physically assaulted by the plaintiffs and others on the scene. He was pushed from behind. We've all watched the video counsel. And he methodically walked through, placing Jacqueline Craig in handcuffs, placing the minor who Once the actual arrests began, the amount of force used was no more than necessary to place handcuffs on these suspects. Counsel, do we have to be able to tell that from the video, whether the amount of force was reasonable or not? Because I mean, we can't measure the amount of force that we see in the video. Is that a problem for your position and maybe for our jurisdiction? Not in this case, your honor. Because the district court did not analyze the evidence, including the video, including affidavits, including some discovery materials. What else, what other discovery material is there besides affidavits in the video? There are interrogatory answers from the plaintiffs and there are declarations from Officer Martin and the police department's use of force expert. There are affidavits from only two of the plaintiffs in this case. And that's another problem they have. But in addition to whether or not they can establish any underlying constitutional violation in the first place, which I think they cannot, that's their first burden to overcome qualified immunity. Their second burden is to clear the hurdle that this court recently called, quote unquote, a doozy because their job is to show that any violation was a violation of clearly established law such that they are able to show as to each claimed use of force that the law was so clearly established that the particular conduct at issue and in the specific context of this case, when framed with the requisite specificity and granularity, would place the question of the lawfulness beyond debate, a challenge or a hurdle that the Supreme Court has repeatedly said is not only difficult but is being misapplied by courts of appeals. Well, isn't it clearly established that a police officer cannot strike an unresisting suspect while making an arrest? If that were, if there were an example of that in this case. Is that a clearly established legal proposition? It would also depend on other circumstances. But if here, the burden is on the plaintiff to produce case law to this court that shows clearly established violations. Right, I'm just asking. I mean, they've cited Darden and they've cited Sam. Those are the two cases they cite. So don't those cases clearly establish that it is unconstitutional to strike an unresisting suspect while affecting an arrest? Well, in the context of those cases, that is the case. But those cases do not meet the plaintiff's burden for two reasons. Number one, they're both two years too late. You've got to two years after the fact. The Darden case, in which the opposing counsel and I also had the pleasure of arguing before this court, has such, it's so far removed from anything remotely related to this case that it can't possibly be applicable. It was a drug seizure where the suspect died of a heart attack after a long struggle. It has nothing to do with the facts of this case. In the Sam case, a suspect fled from the police for a brief distance, laid down, put his hands behind his head, did nothing else, and the court found that the summary judgment record in that case provided that the officer kneed him so hard in the hip that he had to go to the hospital, scraped his face on the ground and arm on the ground to the point that it drew blood, struck him and slapped him for no reason, apparently because he was mad at him for that. That's the only attempt plaintiffs make to meet their burden, and it's not sufficient. In Vann v. City of South Haven, a case out of this court that I'm sure you know well, the court said if you don't raise it at the district court, that's not good enough. The only case I don't have in the briefing is a recent case called Ayala v. Aransas County, 777 Fed Appendix 100, where the court examined the holding in the Vann case and said the reason that that's the law is that you can't be reversing a district court judge for not relying on cases that were never presented to him. And so in this case, they didn't meet their burden in the district court, and even if you were to give them a second chance on their briefing here, they haven't met it here. They've cited two cases two years too late on different facts. What they need to do in this case is with respect to each use of force. And Jacqueline Craig, for example, in her complaint, she says she was, quote unquote, thrown to the ground. Well, the video shows that didn't happen, and the plaintiffs have abandoned that claim. They don't even make that allegation in their briefing or in her affidavit. So in your view, with respect to her, Craig, and the video, we can take the, what's that case from the Supreme Court, Scott? Scott v. Harris. We can take the Scott route. Is this your argument? And say, well, look, we looked at the video, and it blatantly contradicts this allegation. So we're not bound by the allegation for purposes of qualifying. Certainly. With respect to each and every allegation the plaintiffs make that you determine is blatantly contradicted by the video, then you give that allegation of the plaintiffs no credence. You give the video greater weight. The Fifth Circuit case is old. When you say record evidence. Well, talking about Jacqueline Craig, we have two problems. Number one, the only allegation in their complaint is that she was thrown to the ground. So that didn't show up in their, they don't have any evidence to support that. The evidence they do put on now is that Officer Martin was holding her by the arm as she was going to the ground while he was being pushed from behind and drawing his taser to push, to warn the crowd to get back. That is the classic, not every push or shove example of force. He, if anything, lowers her to the ground. They admit in their briefing, he's got a hold of her arm as she goes to the ground. It's such a non-use of force, such a non-excessive use of force that it's plain from the video and from their allegations and from the context of everything that's happening that that is not the Fourth Amendment violation that this court considers to be actionable. They lower Ms. Craig to the ground and there's no, there's no case law that they've presented that says when you're under such a scenario that this officer was under and it was a hostile, loud, he was being yelled at and physically pushed while this was happening, that he's not allowed to help lower a person to the ground who he has the lawful right to arrest. Now, you're saying the person that physically pushed him was J.H., the 15-year-old? That is not correct. And who physically pushed him while he was pointing her to the ground? K.H. is the younger of the two plaintiffs. J.H. is the female who originally intervened in between, yes, and then she backed off. Officer Martin ordered her to the ground. She initially complied, but by the time he finished handcuffing Ms. Craig, she had already stood back up. As he was trying to take Ms. Craig into custody, K.H., the young daughter who later confronts him again, runs around the back and pushes him in the back. In the midst of all that, all he does is lower her down. Already after Craig is up off the ground. Craig is up off the ground when the K.H., whatever she did, took place. It's all happening pretty simultaneously. She pushes him in the back. He's ordering her to the ground. She's going to the ground, apparently voluntarily, and he tries to keep a hold of her with one hand as she's going down. He has to pull his taser to warn the crowd to get away from him. He gets her on the ground, uses no force whatsoever except to apply handcuffs. By that point, K.H. is now up on her feet. J.H., the original, the older of the two. J.H. is on her feet. He approaches her, orders her to get back down, applies handcuffs to her. He calmly gets her up. Walks over to Ms. Craig, calmly gets her up. Walks to the car, and that's when K.H. comes back and confronts them again. Gets in front of him. He tells her to move. She won't. He says, you're going to go to jail if you don't move. She says, I don't care. And he uses a clearing maneuver, pushes her on her shoulder, pushed her out of the way. The calmest possible response to an outright physical aggressive confrontation that an officer could ever be expected to take. He pushes her out of the way. She backs up, gets into a fighting stance, hitches up her pants as if she's going to fight him. He pulls out her taser and says, don't do it. You need to back up. She finally relents, backs up. He puts his taser back up, tries to take them to the car. He's putting J.H. in the car. She won't get in the car. He finally has one hand on one arrested person, Ms. Craig, one hand on the door, and he uses his foot to push J.H.'s legs into the car. And I cite a case where an officer doing the same thing broke a suspect's leg, and it wasn't an excessive force case because he had the right to get the person in the car. Here, certainly, all he did was push her into the car when she clearly was not going in there. And plaintiffs can present no case law that clearly establishes what he did with respect to J.H. was unconstitutional. And it's the same for everybody in this case. Plaintiffs simply have not met their burden to show that Officer Martin loses his qualified immunity under these circumstances. The case is unfortunate because of the way it began. It was a violent, a hostile situation to begin with, and Officer Martin didn't help when he first got there with some unfortunate choice of words. But that's not the measure. The measure is what he did when he made his use of force decisions. And the district court's already held he had the plaintiffs, and when he began to do so, he came under assault. Remind me, were there unlawful arrest claims in this case, and what happened to them? Yes, Your Honor, and those were dismissed on a motion to dismiss. The district court found that all the arrests were lawful or that Officer Martin had qualified immunity from unlawful arrest claims. So, say, we have a written order from the district court on that? We have a written order from the district court on those issues? Yes, Your Honor, and that was not, I believe, did not raise that on this appeal, nor could they have earlier, but they didn't try to bootstrap it onto this appeal. It's not before the courts. Well, they couldn't raise unlawful arrest because unless the qualified immunity aspect, they could have raised, but not the rest. And I forget what the other one was that he dismissed, but that would still be pending after this case is over. Yes, they couldn't have appealed immediately, but there is some law going both ways, I believe, that if we were to appeal as we did here, that some plaintiffs, I believe, have had success saying that the other issues ought to be raised at the same time for judicial economy. I don't know if that would have worked or not, but my point is those issues are not before the court. So from what we're analyzing, we're analyzing lawful arrests taken with, honestly, if you divorce yourself from any thought you have that Officer Martin behaved poorly in the beginning, the most routine use of force that this court will ever see as to all of these suspects. Was anyone charged with resisting arrest? Yes, initially, a couple were, and the J.H., no, I'm sorry, Bria Hyman was arrested because Officer Martin thought that she was the one who had originally pushed him. Turns out that that wasn't the case once everybody looked at the video, but as to her, the district court granted qualified immunity. As to the others, I believe he found that there was no false arrest whatsoever because they had probable cause, he had, Officer Martin had probable cause to arrest for interference with his duties, for assault as to the minor, the youngest of the girls, and so all those arrest claims were held to be lawful. Was anyone, were any of the plaintiffs charged with resisting arrest? I believe that, I believe that Bria Hyman was, and I don't remember the exact charges. Was she acquitted? Were those dropped? I think all the charges were dropped. The analysis, of course, is was there probable cause to arrest for any offense under the circumstances, and that was the measuring  I don't know how it plays into the mix, but K.H., the 14-year-old, whom you say, and I've looked at this video twice, whom you say pushed the officer from the back, the person in the black shirt, she wasn't arrested? That's because he thought Bria Hyman was the one who had pushed him. Now, where do we find that he thought that? What document would we find that in? That would be in his declaration. I believe Corporal Pogue may restate that in his declaration, the use of force expert. I have to, I'll go back and look. Excuse me, who, who might have said it? Corporal Pogue is the use of force expert that said the force options used by Officer Martin were not only reasonable, they were on the... No, why is he talking about what K.H. might have done pushing the officer? That's my question. I was just trying to answer your question about whether it's in the record anywhere. I'm saying primarily, I believe it's in Officer Martin's affidavit that he said he originally thought he was pushed by Bria Hyman because under those circumstances, he couldn't distinguish who was who, especially from behind. I see my time is up. Thank you, Your Honors. Madam Chief Judge, Your Honors, good afternoon. May it please the Court. My name is Matthew Kida, and I represent the Plaintiffs and Appellees in this case. I know there were a bunch of issues raised in the respective briefs, but because the Court was particularly focused on the clearly established issue, I'd like to respond to the arguments that were just raised. As Mr. Reese noted, we did litigate the Darden matter together, and it's correct, the opinion did come out in 2018, but that doesn't mean it's too late, because the cases that Darden relied on when saying the proposition that you can't punch, strike, push, hit, or use any form of violence against a non-resisting compliant suspect... Well, that's a pretty broad proposition, so if you could draw my attention to a case relied on by Darden that has facts somewhat analogous to this situation that would have guided the officer's conduct. I can do half of those things, Your Honor, and I'll explain why. This Court relied on Bush v. Strain in the Darden case, which is a 2008 case. I can't point you to an identical case, and there's a reason... I know it doesn't have to be identical, but that's why I said analogous. It's hard to find a case as, forgive my colloquialism, as obscure or even as ridiculous as this one. Doesn't that mean that the officer gets qualified immunity if you can't point me to an analogous case? Quite the opposite, Your Honor. The standard is whether a reasonable officer would know that what he is doing is unconstitutional. In 1997, the Supreme Court decided United States v. Lanier, and it gave, I think it's the best example ever. It says, there's never been a Section 1983 case accusing welfare officials of selling foster children into slavery. Sure, but we're not selling foster children into slavery here. What is so outrageous that he did, that means you don't need an analogous case. It's just an obvious case. What's outrageous, Your Honor, is this officer was responding to our client's call for help, and rather than help them, he berated them and insulted them until they got angry. If you all watch the video, he did not berate. I should say he should not berate. Very calm. Now, he might have made some poorly chosen statements, such as, what's wrong with that? Why don't you teach him not to litter? Very, very poor choice of words. A woman called the police because a man in the neighborhood choked her son. That's not what we're here about. Let's go blow by blow, literally, as to what you say was unconstitutional conduct for each plaintiff. The original unconstitutional conduct was against Ms. Craig. He believed that he was being pushed in the back by the adult daughter, Rhea Hyman. He was wrong, but he forcefully, and I disagree with my opposing counsel's description. So you're saying he was wrong about that he was being pushed in the back at all, or wrong with respect to who was pushing him in the back? Actually, both. But I mean, he was describing it as a forceful push in the back. The video plainly describes the opposite. It literally shows a young 14-year-old girl bump him in the back. But the idea that this officer is looking at three people who are clearly unarmed, who are not looking for a fight, not looking to start, this is so different than all of the other cases where you have, in fact, it's ironic. But we need to get to the physical context. Okay. Let's go with what he did, not what they did. Just so I'm clear, I feel like I have two lines of question coming at me, one of which wants cases and the other one wants you to go through the facts. So which should I do first? I just want to... He takes precedence. You're the chief, so... Okay. He forcefully pushed Ms. Craig down to the ground. He drew his service weapon and pointed it at a child. He then kicked K.H. when she was in the... Please, start at the start as the chief judge has asked you. Let's go to Craig. Yes. And go through the sequence that you think is the unreasonable conduct. You know, he's talking to her and then the J.H. runs between them. So start right there. And let's talk about Craig first. Ms. Craig is talking to the officer. When he makes the comment about her parenting, she gets agitated. J.H. appears to come up and pull her mom back, say, Mom, he's threatening to arrest you. Let's not go there. The officer, for whatever reason, sees the approaching of this 15-year-old girl as, you know, an approaching attack. He then feels... You think that's reasonable? I do not think that it is reasonable. Someone darting up when you're facing someone and someone is darting up between you, you don't think that's unreasonable? Your Honor, if we were talking about a motorcycle gang, it might be reasonable, okay? And that's why the opposing counsel correctly noted that we refer to these as a doozy. They're very fact-specific. But we're talking about a mom and two teenage girls here and one 18-year-old woman. And when you look at the facts of this case, and that's why the jurisdictional issue here is so important, if two reasonable people could look at these same facts and come to different conclusions, that's not a proper subject for resolving a summary judgment on an interlocutory appeal. Well, it is if the video blatantly contradicts your allegations. Well, correct, Your Honor. And I think that's a very good point because I believe Mr. East is a very reasonable person, as are all three of you. And just in your discussion with him, it's quite apparent that there's a difference of agreement or a difference of opinion as to what actually happened. What is it? What is the reasonable difference of opinion with respect to the video that we've all seen? I think if you look at the way Mr. East described what happened in his brief, and I'll just, you know, summarize it basically, you know, according to the defendant's version of events, the officer voluntarily or Ms. Craig voluntarily complied with his request. He lowered her to the ground. He delicately placed handcuffs on her wrists. I view the video as quite different. I see children in pain, people screaming when they're being accosted. Please, just go through the sequence. Okay. We were at, he's looking at Craig, and this 14-year-old comes running up between them. Now, that is uncontradicted. She did that. She did that, correct. All right. So take us from there. From there, the other daughter, K.H., is behind the officer, and you can see for one second bumps him on the back. At that point, the officer attempts to handcuff Ms. Craig. And he does so by, there's a difference of agreement here, how he gets her on the ground, and he puts her in handcuffs. So you think the way he took her to the ground was excessive force? Yes, Your Honor. You're not, let me understand what you're not saying. You're not saying that he had no right to arrest her? I believe it's in the record, Your Honor, that she had a Class C warrant for a failure to appear, and he was aware of that at the time. Okay. So he, you're saying, I don't want to put words in your mouth, you're saying he had the right to arrest her or not? He could have arrested her for an outstanding reason. So what we're concerned about is the way he arrested her. Exactly, Your Honor. And I think that comes up, and it's addressed in the Sam case that we cited in our brief, and it's also in the Westfall case, which, ironically, opposing counsel cites as authority, but it talks about how you look at the factual circumstances leading up to what constitutes an appropriate amount of force. And I think it's in the Sam case, but they say specifically that low-level crimes such as C-Class misdemeanors, when there are no weapons involved, the three factors that we look at, is there a reasonable threat to the officer's safety? Is there anybody attempting to flee? Can he ask her to go to the grounds before that point? No, Your Honor. No. In fact, he had made the comment about, why don't you teach your children not to litter? She became agitated, and it was at that point that he said, why are you yelling at me? If you don't stop, you're going to go to jail. That's when the daughters intervened, and I think he perceived it as they were coming at him, and he believed we could convince the jury that they were coming to save their daughter from going to jail. And that's the factual dispute here. What was actually — No, it's not. What did he do to Craig? I want you to tell me. He put his hand on her arm, and what do you all say happened? We're saying that he put his hand on her arm and he threw her on the ground. You know, he forcibly lowered her to the ground. They're saying he gently did it. I don't think it's — if the video is not conclusive, then let's let the jury — Anything else that he did to Craig that you contend was excessive force? I believe it's in her affidavit, Your Honor, that she was in an extreme amount of pain as a result of what he did to her. You know, that's — as you noted, Judge — Because of the push to the ground, or because of the way he hand-kept her, or what? Because of what he did — how her body reacted with the ground while he was attempting to subdue her. You certainly don't see that in the video. I'll just tell you that. Correct, Your Honor. And again, that's in her affidavit. What you just said is directly contradicted by the video. Is it directly contradicted, or is it simply not evident as to how much pain she was in? That's one person's opinion. Respectfully, Your Honor, I think somebody might disagree. For example, Ms. Craig, you know, who could tell you exactly what she was feeling. I — So she's on the ground. Keep going. At some point in time, the other two daughters — I'm trying to remember the sequence — one of them is arrested and is placed in the car. No, no, no. You've got — Ms. Craig's on the ground. Yes. Then we next have the 14-year-old — the 15-year-old, J.H. I believe J.H. then approaches Ms. Craig on the ground, and Officer Martin draws a service weapon, points it at her. She immediately retreats. Service weapon or taser? I can't remember off the top of my head, Your Honor. It looked like a taser to me. Okay, perhaps. But it was — When's the last time you watched this video? Last night. But I'm picturing it as a pistol as opposed to a taser. But it's — again. So where's the excessive force with respect to J.H. specifically? I believe J.H. is eventually handcuffed, placed in the service — placed in the police car, and he kicks her legs as a — because she's not complying with her get-your-feet-in-the-car. He's kicking her legs, too, isn't she? My understanding is that her legs are sort of on the side panel of the car, and in order to get her into the car, he kicks her into the car. He's asking her to get in, and she's not getting in. That's clear, right? Yes, Your Honor. Then — What should he have done? Well, it's our position that he should not have arrested her at all. Well, that's — that's foreclosed. Okay. The — well, is it foreclosed that he shouldn't have arrested J.H.? Yes. I knew he could have — I mean, the mother had an outstanding warrant, but I don't — I thought we were told that everybody was — it's been determined by the district court that all three were properly arrested. I — There was cause to arrest. Your Honor, it's my understanding that there was cause to arrest the mom for an outstanding warrant. I don't remember an order from the district court saying that there was probable cause to arrest the two daughters. That's — before — So are you contending in this court there was not probable cause to arrest? That's my position right now, Your Honor. If I'm wrong, I will file a letter with the court, but my understanding was — So where's the — but she — whatever, she's been told she's under arrest. She's handcuffed. She's not compliant. So the force on J.H. — I'm missing — one of the daughters was punched in the sternum when she was — That's different. Okay. We were talking about the daughter who's in the police car who's not getting in the police car, and I mean, you can see on the video the officer kicks at her to get her leg up into the car. Yes. That's the alleged excessive force. That is the force. He's done her. That's while he's also got the mother in handcuffs, and he's got to get her in the car. That is correct. So he's dealing with two persons in handcuffs. Correct, Your Honor. And a hostile crowd screaming. Yes, Your Honor, they were screaming at her. Now, so take us to the third one, the K.H., the 14-year-old. I believe she was coming up at him, essentially asking what he was doing, and she wouldn't move. He told her, get out of my way. And to move her, he jabbed her in the sternum. She's the one wearing the white top in the video? I think, if I'm not mistaken, I think the adult child, Ms. Brea Hyman, was the one wearing the white top, but I'm — This is — she was in the black shirt. Okay. But your view is he punched her in the sternum. The video indicates possibly otherwise. So we'll just have to take a real close look at that. Yes, but again, under the law that we talked about from Bush v. Strain, and rearticulated in the Darden case, if someone is not fleeing, resisting arrest, or endangering the officer, you're not allowed to punch or strike them. But she was interfering with the arrest of two other people. I would argue, Your Honor, that she was not interfering with their arrest whatsoever. You know, she didn't have the physical capacity to interfere with their arrest. She was — Why not? Because she was a 14-year-old girl. She was crying and disturbed about the fact that all of this was happening. But I don't think she had the physical capacity to interfere with the arrest of someone the size of Officer Martin. What was he supposed to do at that point in the video? I mean, we've watched it. She's walking up to him. She's very agitated, I think it's fair to say, walking towards him as he's putting the others into the car. What is the officer supposed to do at that point? I think the — I'm sorry, I'm not at a point where we've — I think an objectively reasonable officer would have realized that this situation had escalated well beyond control. I mean, what's he supposed to do, though? Not punch the girl in the chest. Then alleviate the situation, calm the situation down by not continuing to yell at them and continuing to try and round up everyone that's in the scene and put them in a police car, but instead recognize, OK, we've had a giant misunderstanding here. I didn't mean to upset you. I didn't mean to hurt your feelings. I'm clearly not in danger. Nobody has any weapons. Everyone is free to go. Let's figure out why I'm here in the first place. Nobody has any weapons? As a police officer, having to react that quickly? He doesn't know no one has weapons. You're not helping your case. Your Honor, if — With these overbroad comments you're making. I think if you looked at the video, it's fairly clear about the clothing that they're wearing. We have looked at the video. I've looked at it twice. I'll look at it again. If — I know you mentioned earlier that you've all seen the video, and I wanted to address a couple of the legal points. No, let's finish. Now you've got the woman in the black shirt, and he's called for backup for that. She was the one who was yelling at him most forcefully, and she was the one that was videotaping the scene with her camera. No, I'm talking about K.H. She was in the black shirt. Hyman was in the gray sweater or whatever — pullover. All right? So go to Hyman. Okay, that's where I was going. After K.H. is moved out of the way, he walks around the car, is in a verbal altercation with her, eventually handcuffs her, and, you know, again, there's a dispute as to the amount of pain that she was in. I think the history is — She approaches him. He doesn't approach her. She — yeah, she definitely approaches him. That is for certain. But she's angry about the treatment that her mother's received. She's the one telling him, your camera isn't any good. It's fixed, so it doesn't show the true what happens. I mean, it's just tragic, the perception. About what the police do and what they intend. She was angry, Your Honor, and I think I would certainly submit that she probably said things to an officer that she ordinarily would not have said. But what we're concerned about is what did the officer do to her that is allegedly — creates fact issue as to excessive force. I think that her description of the pain that the officer inflicted on her — Well, that's a description of pain. What did he do? He handcuffed her and he pushed her and he raised her arms up, you know, intentionally while she was handcuffed to further subdue her. Not to prevent her arms from reaching for contraband or for weapons, but — Did the video show her resisting? The video shows movement when, you know, we are alleging that the video shows that he is holding the strings — What is your name? Excuse me? He is saying to her, what is your name? Yes. She won't answer. She's not being compliant. And so he lifts her arms up and I think there's a term for that. Some police technique. But that's the extent of that, isn't it? That's correct. So I hope that answers the question in terms of what physical force was used on each of the four plaintiffs. The concern that I have about comparing this case to Scott v. Harris, which is the one you asked Judge Duncan, in that case you had video that conclusively established one thing and an affidavit that was absolutely polar opposite. And, you know, the plaintiff in that particular case suggested that the person who was on a 100-mile-an-hour car chase was just like out for a Sunday drive and was obeying the law when the video showed the complete opposite. Let me ask you this real quickly. Yes, Your Honor. What, if anything, is not shown on the video? What contact, physical contact, do you say is not shown on the video? I think, Your Honor, that all of the physical contact between the officer is recorded and is on the video. I think there's a question as to its appropriateness and the extent to which it, you know, inflicted pain such that it could be deemed by a reasonable juror to be excessive. I think, I'm running out of time, it's closely, but... So back a while ago I was asking you, you know, Darden and Sam post-date the encounter. So I was asking, well, give me some other cases that are pre-encounter that would have guided this officer's actions such that he would have known, any reasonable officer would have known what I'm doing here is wrong, unconstitutional. I think Bush v. Strain was the best one that we, that's cited in Sam and in Darden. Again, the general... That's a different case. Is that the one where they slammed the woman's head into the car and broke her teeth? I believe that's correct, Your Honor. I think I wrote that. Quite a bit different. It is quite a bit different, Your Honor. I guess that's sort of the problem with this, the clearly established part, is because you're never going to have identical factual circumstances. But on the flip side, that means that everybody gets to, or any officer can do something unconstitutional once, and as long as he or she is the first person to do it, you know, they get out of jail free card. And that's not good policy. You're basically saying any contact of any, you know, is unconstitutional more. I mean, you lift her arms and that's excessive force. Your Honor, I'm not saying that... Try to get someone who's kicking and screaming's legs into the car, that's excessive force. Your Honor, I'm going back to the very beginning and going, focusing specifically on Ms. Craig, but under those circumstances, any contact with her, we're suggesting, would be excessive, or at the very least, reasonable people could disagree as to whether it was excessive. That sounds like what Chief Judge Owen just said, that we can arrest, the officer can arrest her, but you just said any contact with her would be excessive force. What is he supposed to do? That's the other part here, Your Honor. I think a reasonable juror could look at this video and say, he never had any intention of arresting her for outstanding warrants whatsoever. What difference does it make that he arrested her? What difference does it make if he had the right to arrest her, what his original intent was? That intention didn't have anything to do with it. I see I'm out of time, can I briefly answer? We'll give you some more. Excuse me? We'll give you some more. Okay, thank you. The question here is, under the circumstances that he faced, and the opposing counsel stated, the inquiry begins at the moment the contact was made. What would a reasonable officer have done? Did he have the authority to arrest her? Yes. Should he have done it? Would a reasonable officer have done it that particular way? I mean, there's two young girls that are walking his direction. You know, is the appropriate thing to do to say, ma'am, you have an outstanding warrant. I have to take you in. Please turn around. Please comply. Or is it to say, kids, you know, I have to talk to your mom about something here. This is important. You know, whatever it could be. But the point being is violently, excuse me, pushing a woman to the ground in front of her where contending was excessive. Does the video show how many people were in the immediate vicinity? The officer, excuse me, Your Honor. No, go ahead. The officer Martin's camera, because it was on his body, begins before, I believe it was my client's camera. So that shows him running down the street. And I believe it does show that there were some other people on the street. Throughout the altercation, I'll be honest, I was focusing more on my clients than other people that might have been in the background. But there may have been other people in the area as well. If you have no other questions, I'll rest my brief. Thank you for your time. In order to address one comment of Judge Barksdale's that I think may avoid confusion when Black Hoodie, which she takes off between the time she pushes Officer Martin and later comes back and stands in front of him. Same person. You can tell by the face. You can tell by the photographs in the briefs. If you look at page 22 of my brief, you see the still frames where she's pushing him. And on page 27 of my brief, you see the still frames where he clears her out of his way. Those are both KH. With regard to Ms. Craig, how can we tell from the video how much force he used when he, his hand contacted her arm and she went to the ground? Well, the ultimate question is reasonableness. And under these circumstances, when he, and I also direct, it reminds me of another point I wanted to make that will help answer the question. When you're viewing the videos, even if all you want to rely on is the video, I implore you to please look at Officer Martin's declaration that begins at page 348 of the record and Corporal Pogue's declaration that begins at page 373 of the record, just to help you understand from a police officer's perspective what you're seeing. And with Jacqueline Craig, he says in his declaration, once the chaos began when JH intervened and he was feeling the push from KH, he draws his taser and orders everybody to the ground. And if he had approached a person on their own with a Class C warrant and somehow violently threw them to the ground because they had a Class C warrant in and of itself, not that he threw her to the ground at all, but those are different circumstances. Here, there's a safety issue when you have that much chaos. Back to Ms. Craig. Yes, Your Honor. He did put his hand on her arm. Yes. And how do we know from the video how much force he applied, whether he pushed her to the ground, whether it was gentle? How do we know how much force was applied at that moment in time? And had he ordered her to the ground prior to that? Yes, he had ordered everybody to the ground when he withdrew his taser. And he is initially pointing the taser at the crowd, then he helps her to the ground and puts the taser on her back and says, don't resist. Then he raised, you know. How do we tell from the video how much force he used getting her to the ground? I don't think you can tell the, are you talking about the grip strength that he was using? Grip strength and the forward motion, the pressure to get her down. Well, I think it's clear from the video he wasn't pushing pressure on her to go to the ground. She goes to the ground very slowly. And he was holding her, trying not to lose a grip of her. I think it's apparent from the video that there's nothing excessive about that maneuver. I think if the de minimis analysis comes into play in this case, and I don't know that it needs to, but if it does, that's a good example. What is the degree that's alleged by Craig as a result of this force? It hurt her arm. And I think, you know, the squeezing hurt her arm. And I think that is analogous to the handcuffing cases we have, the Tarver and City of Tyler cases where handcuffing, you know, painful handcuffing isn't enough to state a claim. Well, I mean, I guess just to pick up on what you were saying to Chief Judge Owen, I mean, at a certain level, it's impossible to tell from a video the degree of grip strength. Nobody can know that. But in Scott, it's presumably it's impossible to tell whether the guy was going 97 or 105. I don't think the justices in the Supreme Court in the Scott case all agreed on exactly what the video showed. It was the ultimate conclusion of whether or not it supported a reasonableness determination or not. And with Jacqueline Craig, again, the only allegation in the complaint is he threw her to the ground. He plainly did not throw her to the ground in response to summary judgment. They change it to he squeezed my arm too hard. I think the totality of those facts and the video, I think, conclusively show that his force was not unconstitutional. By the way, do I get from your briefs that both sides agree that we should make our own assessment of the record here instead of remanding? Yes, Your Honor. In a footnote in Apolli's brief, they agree that that would be the most economical way for this court to proceed, especially in light of the need to resolve qualified immunity at the earliest possible stage and recognizing the immunity from the lawsuit, not just from liability. I don't think anybody disagrees with that. And with regard to the Brea Hyman matter, again, if you'll read those declarations, that will inform your perception. I think the appropriate view of that is the resistance she was using to him even while he was trying to hold her. He and Corporal Pogue both say that they've been headbutted in the face before by handcuffed female minors who are still not complying with commands, even when handcuffed, and all he was doing was trying to control her movements. I'm out of time. Thank you very much. Thank you.